UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PINE TOP RECEIVABLES OF ILLINOIS, LLC, a limited liability corporation, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 12 C 6357 |
| v. | ) ) | Judge Marvin E. Aspen |
| BANCO DE SEGUROS DEL ESTADO, statutory corporation wholly owned by the Sovereign Republic of Uruguay, | ) ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Court Judge:

Plaintiff Pine Top Receivables of Illinois, LLC ("PTRIL" or "Plaintiff") filed suit on August 12, 2012 to collect payments allegedly due its assignor, Pine Top Insurance Company ("Pine Top"), from Defendant Banco de Seguros del Estado ("Banco" or "Defendant"). (Dkt. No. 1.) It seeks alternatively to compel arbitration (Count I) or to obtain judgment from the court (Count II). (Comp. ¶¶ 27, 29.) Banco filed a motion to dismiss Count I and an answer to Count II. (Dkt. Nos. 9, 13.) PTRIL moved the court to strike the motion to dismiss and the answer for failure to comply with the Illinois Insurance Code, 215 ILCS 5/123(5) ("Code"). (Dkt. No. 16.) For the following reasons, we deny Plaintiff's motion to strike.

**BACKGROUND**

Before entering receivership in 1985, Pine Top engaged in the reinsurance business. (Mem. at 1.) Between 1977 and 1984, Defendant entered into a number of contracts with Pine

Top, by which it agreed to pay specified shares of Pine Top's liabilities related to underlying insurance contracts in exchange for premium payments and other recoveries. (Mem. at 2; Compl. ¶¶ 9–11.) In 1986, the Circuit Court of Cook County placed Pine Top into liquidation and appointed the Illinois Deputy of Insurance as its Liquidator. (Compl. ¶ 7.) During the liquidation process, Plaintiff incorporated in order to purchase Pine Top's reinsurance accounts receivable. (Mem. at 1.) The Liquidator subsequently executed an assignment to Plaintiff of all rights, title, and interest in accounts receivable arising out of Pine Top's contracts and treaties of reinsurance. (Compl. ¶ 1.)

After conducting an accounting of Pine Top's outstanding debts and credits, the Liquidator sent Defendant a letter dated July 31, 2008 demanding more than $2,000,000 in overdue balances that Defendant allegedly owed on various contracts with Pine Top. (Answer ¶ 18.) Defendant disputed the Liquidator's demand, and Plaintiff initiated the present suit to compel arbitration, or in the alternative, for judgment awarding the balance as stated by the Liquidator. (Answer ¶ 19; Compl. ¶¶ 27, 29.) Defendant has filed an answer and a motion to dismiss. (Dkt. Nos. 9, 13.)

Plaintiff moved to strike the answer and motion to dismiss, alleging that Defendant has not paid pre-judgment security as required by the Code. (Mem. at 2.) The Code provides in part:

> Before any unauthorized foreign or alien company shall file or cause to be filed any pleading in any action or proceeding, including any arbitration, instituted against it, such unauthorized company shall . . . deposit with the clerk of the court in which such action or proceeding is pending or with the clerk of the court in the jurisdiction in which the arbitration is pending cash or securities or file with such clerk a bond with good and sufficient sureties, to be approved by the court, in an amount to be fixed by the court sufficient to secure the payment of any final judgment which may be rendered in such action, proceeding, or arbitration[.] 215 ILCS 5/123.

Defendant opposes the motion on three grounds: (1) because Defendant is an instrumentality of a foreign state, it is immune from the pre-judgment security requirement under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.* (2006) ("FSIA"); (2) Plaintiff lacks standing to enforce the Code; and (3) the Code was not amended to extend the security provision to reinsurers until 1997, so the court may not apply that provision retroactively to contracts that the parties entered in the 1970s and 80s. (Opp'n at 1.)

## ANALYSIS

### I.      Plaintiff's Standing under 215 ILCS 5/123(5)

First we address whether Plaintiff has standing to seek pre-judgment security under the Code. Because the issue of pre-judgment security arises under an Illinois statute, the Plaintiff must satisfy the requirements of both Article III and the state law of standing. *See* 13B Fed. Prac. & Proc. § 3531.14 (3d ed. 2008) ("[A]s to litigation involving state rights but commenced in federal courts or removed to them, state law [on standing] ordinarily should apply," but "state rules that recognize standing need not be honored if Article III requirements are not met . . ."); *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173 (2d Cir. 2005) ("Where, as here, jurisdiction is predicated on diversity of citizenship, a plaintiff must have standing under both Article III of the Constitution and applicable state law in order to maintain a cause of action.").

Defendant does not challenge Plaintiff's constitutional standing, but we observe for the sake of completeness that Plaintiff easily meets the requirements of Article III. "To establish Article III standing, a plaintiff must allege (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be 'redressed

by a favorable decision.'" *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 908 (N.D. Ill. 2012) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136 (1992)). Here, Plaintiff has alleged concrete injury in the form of unpaid debts, attributable to Defendant's failure to pay, which is entirely redressible by a favorable decision. (Compl. ¶¶ 19, 29.) Thus, Plaintiff has standing under Article III.

Defendant argues, however, that Plaintiff lacks standing because it is not an "intended or incidental beneficiary of the Statute," or "a member of the class the Statute was designed to protect." (Opp'n at 9–10.) Beyond the requirements of Article III, we look to the Illinois Supreme Court to determine whether Plaintiff has standing to bring a claim under state law. *See, e.g.*, *City of Yorkville ex rel. Aurora Blacktop Inc. v. Am. S. Ins. Co.*, 654 F.3d 713, 716 (7th Cir. 2011) (applying Illinois law to the question of standing in a state-law contract dispute); *Kathrein v. McGrath*, 166 F. App'x 858, 863 (7th Cir. 2006) (applying Illinois law of standing to a state-law fraudulent billing claim). Defendant's argument fails under state law, because the Illinois Supreme Court has specifically rejected the "zone of interest" or "protected class" tests for statutory standing. *Glisson v. City of Marion*, 188 Ill. 2d 211, 222, 720 N.E.2d 1034, 1040 (Ill. 1999); *Greer v. Ill. Hous. Dev. Auth.*, 122 Ill. 2d 462, 487, 524 N.E.2d 561, 572 (Ill. 1988).

The court in *Greer* considered the zone-of-interest test, which requires "that the interest asserted by the plaintiff lies within the zone of interests arguably sought to be protected by the statute in question." 122 Ill. 2d at 487, 524 N.E.2d at 572 (citing *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 155–56, 90 S. Ct. 827, 830–31 (1970)). After reviewing the "checkered career" of the test, the court decided that "the zone-of-interests test would unnecessarily confuse and complicate the law, [so] we decline to adopt it." *Id.* In *Glisson*, the

4

court reaffirmed the holding in *Greer* and expanded it to preclude the rule announced in *Lynch v. Devine*, 45 Ill. App. 3d 743, 359 N.E.2d 1137 (3rd Dist. 1977). 188 Ill. 2d at 222, 720 N.E.2d at 1040. The *Lynch* rule "provides that, where the suit alleges injury due to violation of a statute, the doctrine of standing requires that the plaintiff be a member of the class designed to be protected by the statute, or one for whose benefit the statute was enacted, and to whom a duty of compliance is owed." *Id.* Noting the similarity between the *Lynch* rule and the zone-of-interest test, the court explained that "both tests require a consideration of the underlying purposes of the statute at issue so as to determine whether the plaintiff was among its intended beneficiaries such that the statute was designed to protect the plaintiff's interest." *Id.* The court held that "we refuse to expand the requirements for standing to include the additional requirements set forth in *Lynch*." *Id.*

To establish standing under Illinois law, all the court requires is that the claimed injury be "(1) distinct and palpable; (2) fairly traceable to the defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief." *Id.* at 221. These requirements are identical in substance to the requirements of Article III. For the same reasons that Plaintiff satisfies Article III, discussed above, Plaintiff also satisfies Illinois law of standing. Accordingly, we hold that Plaintiff has standing to file a motion to strike under the Code.

  **II.**  **Defendant's Immunity under the FSIA**

Defendant further contends that the FSIA immunizes it from the pre-judgment security requirement. (Opp'n at 2–3.) The relevant part of the FSIA prohibits attachment of the property of a foreign state or its instrumentalities. 28 U.S.C. §§ 1603, 1609. Plaintiff concedes that Defendant is an instrumentality of the Republic of Uruguay. (Reply at 1–3.) But Plaintiff

5

nevertheless argues that the FSIA is inapplicable in this case for two reasons: (1) the pre-judgment security required by the Code is not an "attachment" within the meaning of the FSIA; and (2) even if the security were an attachment, Defendant explicitly waived its immunity through certain provisions of its contracts with Plaintiff. (Reply at 3, 10.) We disagree with both of Plaintiff's arguments.

### A. *Pre-Judgment Security is an Attachment*

Plaintiff makes a reasonable argument that the pre-judgment security under the Code is distinguishable from an attachment under the FSIA, based on the different purposes of the two provisions. (Reply at 5–10.) Plaintiff points out that attachments are a procedural device, while the pre-judgment security under the Code is a substantive measure designed to regulate the insurance market by leveling the playing field between licensed and unlicensed insurers. (*Id.* at 6, 8–9.) According to Plaintiff, "the pre-answer security rule is no more an attachment than a requirement that foreign parties pay filing fees and that their counsel obey traffic laws on the way to the courthouse." (*Id.* at 8.)

The courts that have considered this issue, however, have looked to the practical effect of the pre-judgment security rather than its underlying purpose. In *Stephens v. National Distillers & Chemical Corporation*, the Second Circuit considered the pre-judgment security requirement in the New York statute, N.Y. Ins. Law § 1213(c)(1) (McKinney 2006), that is nearly identical to the requirement at issue in this case. 69 F.3d 1226, 1228 (2d Cir. 1995). There, the court held that

> . . . FSIA's ban on pre-judgment attachment of assets should preclude any other means to effect the same result. The pre-judgment security requirement before us would force sovereign retrocessionaires to place some of their assets in the hands of the United States for an indefinite period. During that time, the retrocessionaires

would have no access to those assets. All this is precisely the same result that would obtain if the foreign sovereign's assets were formally attached. There is, therefore, no significant distinction between New York's security requirement and an attachment of the property. *Id.* at 1229 (internal quotes and citations omitted).

The Seventh Circuit noted this holding in *International Insurance Company v. Caja Nacional De Ahorro y Seguro*, but it specifically declined to decide the issue, as the parties had not raised it in that case. 293 F.3d 392, 399 n.13 (7th Cir. 2002). In the absence of direct guidance from the Seventh Circuit, our district has relied on *Stephens* in deciding that the Illinois pre-judgment security requirement is equivalent to an attachment under the FSIA. *TIG Ins. Co. v. Banco de Seguros del Estado*, No. 06 C 1395 (N.D. Ill. filed May 3, 2007) ("This court . . . adopts the rule of *Stephens* as noted by the Seventh Circuit."); *see also Int'l Ins. Co. v. Caja Nat'l de Ahorro y Seguro*, No. 00 C 6703, 2001 WL 322005, at *1 (N.D. Ill. April 2, 2001) (citing *Stephens*).

Thus, while there may be a logical basis for Plaintiff's argument, the case law does not support it. The Second Circuit focuses on the practical effect of the pre-judgment security requirement in order to prevent courts and state legislatures from "eviscerating [FSIA's] protections merely by denominating their restraints as injunctions against the negotiation or use of property rather than as attachments of that property." *Stephens*, 69 F.3d at 1229. We find this reasoning persuasive and therefore choose to remain consistent with the decisions in this district that adopt the rule in *Stephens*. Accordingly, we hold that the pre-judgment security requirement in the Code is equivalent to an attachment under the FSIA.

   B.  Banco Did Not Expressly Waive Its Immunity

Next, we must determine whether Defendant waived its immunity. The FSIA provides that the "property in the United States of a foreign state . . . used for a commercial activity in the United States, shall not be immune from attachment . . . if the foreign state has waived its immunity . . . either explicitly or implicitly[.]" 28 U.S.C. § 1610(a)(1). In this case, Plaintiff argues that certain provisions in its contracts with Defendant (though it failed to specify exactly which provisions) waived immunity under the FSIA by requiring Defendant to collateralize its obligations with cash and letters of credit. (Reply at 10–11.) As far as we can tell from our own review of the contracts, the provisions requiring reserves of cash and letters of credit make no mention of legal proceedings. (*See, e.g.*, Dkt. No. 9-2, App. A.) They simply require the reinsurer to be sufficiently capitalized to meet its contractual obligations. (*Id.*)

Plaintiff argues, however, that the Second Circuit found waiver of FSIA immunity in *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255 (2d Cir. 2003), based on contractual provisions identical to the ones in this case. (Reply at 10–11.) Plaintiff misreads the Second Circuit's decision. In *Banco*, the court read the arbitration clause, not the reserves clause, as a waiver of FSIA immunity. 344 F.3d at 261. The arbitration clause "relieved [the arbitrators] of all judicial formalities" and allowed them "to abstain from following the strict rules of law." *Id.* Thus, the *arbitrator*, not the court, was free to require pre-judgment security, based on the language of the arbitration clause. *Id.*

In *Banco* the reserves clause was only relevant to the question of whether the arbitrator could order a letter of credit as security. *Id.* The court answered that question in the affirmative, reasoning that since the parties provided for letters of credit as collateral in the reserves clause, they had "embraced the usefulness of letters of credit as the means of securing their respective

8

rights and obligations." *Id.* at 262. In other words, the reserves clause was not the basis of the waiver; it only confirmed letters of credit as an acceptable form of pre-judgment security. Therefore *Banco* is inapposite, and Plaintiff cites no other case in support of its argument for waiver. Accordingly, we hold that Defendant has not waived its immunity under the FSIA.[1]

## CONCLUSION

As the FSIA immunizes Defendant from the imposition of pre-judgment security in this case, and Defendant has not waived that immunity, we must deny Plaintiff's motion to strike. It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Date: December 13, 2012

---

[1] Because our holding on the FSIA issue is dispositive, we do not address Defendant's argument regarding the retroactive application of the Code.