UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PINE TOP RECEIVABLES OF ILLINOIS, LLC, a limited liability corporation, | |
| Plaintiff, | Case No. 12 C 6357 |
| v. | Judge Marvin E. Aspen |
| BANCO DE SEGUROS DEL ESTADO, statutory corporation wholly owned by the Sovereign Republic of Uruguay, | |
| Defendant. | |

# MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Court Judge:

Plaintiff Pine Top Receivables of Illinois, LLC ("Plaintiff" or "PTRIL") seeks to collect debts that Defendant Banco De Seguros del Estado ("Defendant" or "Banco") allegedly owes PTRIL's assignor under a number of reinsurance treaties. (Compl. ¶ 27.) PTRIL filed a two-count complaint for an order compelling arbitration (Count I), or in the alternative, for damages caused by Defendant's alleged breach of contract (Count II). (*Id.* ¶¶ 27, 29.) Presently before us is Defendant's motion to dismiss Count I for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 9.) For the reasons stated below, we grant Defendant's motion and dismiss Count I without prejudice.

## BACKGROUND

We draw the following facts directly from the complaint and accept them as true for the purposes of the present motion. Banco is a corporation wholly owned by the Republic of

Uruguay that engages in the business of insurance and reinsurance. (Compl. ¶ 2.) Pine Top Insurance Company ("Pine Top") likewise engaged in the reinsurance business prior to entering liquidation in 1986. (*Id.* ¶ 7.) Between 1977 and 1984, Pine Top and Banco allegedly entered into five reinsurance treaties ("Treaties") that required Banco to pay a share of Pine Top's liabilities on underlying insurance contracts in exchange for premium payments and other recoveries. (*Id.* ¶¶ 9, 11.)

When Pine Top entered liquidation proceedings, a Liquidator took possession of Pine Top's assets and operations. (*Id.* ¶¶ 7, 16.) The Liquidator performed Pine Top's obligations under its contracts until "he was satisfied that all or substantially all of the events that could affect the amount due to or from Defendant had been accounted for." (*Id.* ¶¶ 17–18.) In July 2010, the Liquidator "provided a final account stated with respect to each treaty of reinsurance, and demanded payment of the net amount due to Pine Top." (*Id.* ¶ 18.) At that time, Defendant refused to pay the amounts that it allegedly owes. (*Id.*)

On November 16, 2010, PTRIL entered into a Purchase Agreement and Assignment of Debt ("Assignment Agreement" or "Agreement"), by which the Liquidator assigned to PTRIL "all right, title and interest in all net balances due from known and unknown debtors" to Pine Top. (Compl. ¶ 6; Mot., Ex. D.) When PTRIL attempted to collect the balance that Banco allegedly owes on the five reinsurance treaties identified in the Complaint, Banco refused to pay or submit to arbitration. (Compl. ¶¶ 23–24.) As a result, PTRIL initiated the present lawsuit.

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910

F.2d 1510, 1520 (7th Cir. 1990). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks enough facts "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949–50 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964.

**ANALYSIS**

**I.     The documents that Banco attached to its motion are part of the pleadings.**

Banco appended a number of documents to its motion, including the Assignment Agreement (Mot., Ex. D) and partial copies of three of the Treaties (Mot., Exs. A–C). In *Venture Associates Corporation v. Zenith Data Systems Corporation,* the Seventh Circuit held that documents "a defendant attaches to a motion to dismiss are considered part of the pleadings

3

if they are referred to in the plaintiff's complaint and are central to her claim." 987 F.2d 429, 431 (7th Cir. 1993). PTRIL does not dispute the authenticity or centrality of the documents. (Resp. at 3.) Nevertheless, PTRIL argues that "Defendant's submission does not qualify for the treatment provided in *Venture Associates*, chiefly because Defendant insists on avoiding a straightforward admission that, in fact, it is a party to any of the five reinsurance treaties in the suit." (*Id.* at 2.) PTRIL is apparently concerned about Banco introducing these documents into the pleadings while at the same time challenging their relevance to the suit. (*Id.* at 3 ("Lacking a clear and authentic concession by Defendant that the documents it provides are really the ones 'central to the claims,' the documents submitted by [Defendant's counsel] 'control' very little.").)

It is not clear that PTRIL's concern would be valid grounds for excluding the documents under *Venture Associates*, but in any case, Banco's reply states unequivocally that "for the purposes of the pending motion, Banco has, in fact, admitted that Banco executed all of the alleged treaties and that the Assignment Agreement is a valid document." (Reply at 8.) This admission adequately satisfies Plaintiff's objection. The parties agree that the documents are authentic and central to PTRIL's claims. The Treaties and the Assignment Agreement are not only referenced in the complaint, they are the basis for it. (Compl. ¶¶ 6, 11.) Therefore, these documents meet requirements of *Venture Associates.* 987 F.2d at 431. Accordingly, we read them as part of the pleadings. *Id.*[1]

---

[1] It is arguable that the June 26, 2012 letter that Banco attached is not central to PTRIL's claim. (Mot., Ex. E; Resp. at 3 n.1.) Indeed, Banco acknowledges that the letter is "not relevant for the purposes of Banco's motion to dismiss." (Reply at 8 n.6.) Therefore we do not consider it part of the pleadings.

## II. PTRIL has no right to arbitrate under the treaties.

PTRIL seeks to compel arbitration of this dispute under the terms of the Treaties. (Compl. ¶ 27.) It asserts the right to enforce these terms as Pine Top's assignee. (Compl. ¶ 22.) Banco acknowledges that the Treaties contain binding arbitration clauses. (Compl. ¶ 20; Mem. at 2.) Banco argues, however, that the Assignment Agreement only gave PTRIL limited rights to collect certain debts—it did not assign PTRIL all of Pine Top's rights and duties under the Treaties. (Mem. at 7–10.) The plain language of the Assignment Agreement supports Banco's argument. (Mot., Ex. D, cl. 2.4.1.)

We interpret assignments "according to the rules of contract construction." *Amalgamated Transit Worker's Union, Local 241 v. Pace Suburban Bus Div.*, 407 Ill. App. 3d 55, 60 (1st Dist. 2011); *Stilwell v. Am. Gen. Life Ins. Co.*, 555 F.3d 572, 577 (7th Cir. 2009) ("General contract law governs the making of assignments."). Therefore, we look to the manifest intent of the parties to determine the existence and scope of an assignment. *Brandon Apparel Group v. Kirkland & Ellis*, 382 Ill. App. 3d 273, 284, 887 N.E.2d 748, 756 (1st Dist. 2008) ("Whether an assignment has occurred is dependant upon proof of intent to make an assignment and that intent must be manifested."); *Nw. Diversified, Inc. v. Desai*, 353 Ill. App. 3d 378, 387, 818 N.E.2d 753, 761 (1st Dist. 2004) ("The creation and existence of an assignment is to be determined according to the intention of the parties. . ."). Under Illinois law, we discern the parties' intent solely from the terms of the contract, absent any ambiguity. *Lansing v. Carroll*, 868 F. Supp. 2d 753, 763 (N.D. Ill. 2012); *Buenz v. Frontline Transp. Co.,* 227 Ill. 2d 302, 308, 882 N.E.2d 525, 528–29 (2008) ("The cardinal rule of contract interpretation is to discern the

parties' intent from the contract language."). Where the contract's language is plain, the agreement should be enforced as written. *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012); *Salce v. Saracco*, 409 Ill. App. 3d 977, 981, 949 N.E.2d 284, 288 (2d Dist. 2011) ("If the language of a contract is clear and unambiguous, the intent of the parties must be determined solely from the language of the contract itself, which should be given its plain and ordinary meaning, and the contract should be enforced as written.").

PTRIL does not claim any right to arbitrate arising separately under the terms of the Assignment Agreement itself. It bases its motion to compel arbitration solely on the terms of the Treaties. (Compl. ¶¶ 20–22.) Yet the Agreement plainly states that it "shall not be construed to be a novation or assignment of the Policies."[2] (Mot., Ex. D, cl. 2.4.1.) Instead, the Agreement assigned PTRIL "all rights, title, benefit and interest in the Debts," defined as "the net balances due . . . pursuant to the terms of the Policies." (*Id.* cls. 1.1, 2.1.) The assignment included the authority to "obtain from any party having possession thereof any information relating to the Debts or any Policies from which such Debts might have arisen, to the same extent and under the same conditions as the Assignor could have done so in an exercise of its contractual rights." (*Id.* cl. 5.1.) It also granted PTRIL the authority "to demand, sue for, compromise and recover all amounts as now are, or may hereafter become, due and payable for or on account of the debts." (*Id.* cl. 5.2.) It further provided that "nothing in this Agreement shall create any obligation on the part of the Assignee to any person other than the Assignor." (*Id.*)

---

[2] The Assignment Agreement defines the term "Policies" as "All known and unknown contracts of insurance or reinsurance entered into by Pine Top." (Mot., Ex. D, cl. 1.1.) Thus clause 2.4.1 clearly includes the Treaties at issue in this case.

Thus, the plain language of the Agreement indicates that the parties did not intend for PTRIL to assume all of Pine Top's rights and duties under the Treaties. Clause 2.4.1 is an unambiguous statement to that effect. This understanding of the parties' intent is also supported by the clauses delineating the extent of PTRIL's authority under the Agreement, because they would be superfluous if the parties meant to assign all of Pine Top's contractual rights. Furthermore, the clause providing that PTRIL assumes no obligation to "any person other than the Assignor" establishes that PTRIL itself is not bound by the Treaties to arbitrate disputes.

Therefore, under the plain meaning of the terms of the Assignment Agreement, PTRIL has no right to enforce the Treaties' arbitration clauses. Its rights as an assignee are limited to the powers granted by the Assignment Agreement, which makes no mention of mandatory arbitration between PTRIL and Pine Top's debtors. (Mot., Ex. D.) PTRIL's arguments to the contrary never address clause 2.4.1. Instead, it appears to argue that the assignment of debts owed under a contract is equivalent to the assignment of the contract in its entirety. (Resp. at 5 ("When called upon to consider the question, other states . . . have consistently endorsed the right of an assignee to demand arbitration, as well as his obligation to arbitrate, even when the assignment transferred only rights, and not duties, created by the underlying contract.").)

It is well-settled, however, that "an assignor may transfer some or all of its rights." *Chemetall GMBH v. ZR Energy, Inc.*, 320 F.3d 714, 723 (7th Cir. 2003); *Klehm v. Grecian Chalet, Ltd.*, 164 Ill. App. 3d 610, 616, 518 N.E.2d 187, 191 (1st Dist. 1987) ("A valid assignment . . . need only to assign or transfer *the whole or a part* of some particular thing, debt, or chose in action and it must describe the subject matter of the assignment with sufficient particularity to render it capable of identification.") (emphasis added). The assignment of a part

does not include the whole.  *Buford v. Palisades Collection, LLC*, 552 F. Supp. 2d 800, 809 (N.D. Ill. 2008).  In *Buford*, the defendant "purchased all of AT&T's rights, title, and interest in the AT&T accounts" belonging to the plaintiffs.  *Id.* at 803.  When the plaintiffs filed a class action complaint alleging violations of the Fair Debt Collection Practices Act, the defendant sought to enforce the class action waiver include in the Terms and Services Agreement between the plaintiffs and AT&T.  *Id.* at 802, 808–09.  The court held that the defendant had not shown whether it had "purchased all, or only part, of the Terms and Services agreement.  As [the defendant] is a debt collector, but not a wireless services provider, AT&T's sale or assignment to [the defendant] would appear to be only partial, having to do with payments and charges, but not wireless service and usage." *Id.* at 809.  Therefore, despite the fact that the defendant had purchased "certain AT&T wireless communications debts," it did not necessarily follow that the defendant "acquired all rights that AT&T had with respect to the Terms and Services agreement—including the right to enforce the class action waiver provision—when [the defendant] purchased Plaintiffs' wireless communications debts." *Id.* at 810.

The same principle applies here.  PTRIL purchased the right to collect debts owed under the Treaties.  (Mot., Ex. D.)  The Agreement that PTRIL executed pursuant to that purchase expressly states that it should not be construed as an assignment of the underlying Treaties.  (*Id.* cl. 2.4.1.)  Therefore, like the defendant in *Buford*, PTRIL has a limited right to collect contractual debts, but not to enforce the provisions of the underlying contract.  *Buford*, 552 F. Supp. 2d at 809.  Accordingly, we dismiss PTRIL's motion to compel arbitration.

8

## CONCLUSION

For the foregoing reasons, we grant Defendant's motion and dismiss Count I of Plaintiff's complaint without prejudice. It is so ordered.

                                                                         _____
                                                                         Honorable Marvin E. Aspen
                                                                         U.S. District Court Judge

Date: February 25, 2013