UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PINE TOP RECEIVABLES OF ILLINOIS, LLC, a limited liability corporation, | |
| Plaintiff, | Case No. 12 C 6357 |
| v. | Judge Marvin E. Aspen |
| BANCO DE SEGUROS DEL ESTADO, statutory corporation wholly owned by the Sovereign Republic of Uruguay, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Court Judge:

Plaintiff Pine Top Receivables of Illinois, LLC ("Plaintiff" or "PTRIL") seeks to collect debts that Defendant Banco De Seguros del Estado ("Defendant" or "Banco") allegedly owes Plaintiff's assignor, Pine Top Insurance Company ("Pine Top"), under a number of reinsurance treaties. (First Am. Compl. ("FAC") ¶ 26, 31.) Plaintiff filed a three-count amended complaint for an order compelling arbitration (Count I), an order holding that Defendant is estopped from opposing arbitration (Count II), or in the alternative, for damages caused by Defendant's alleged breach of contract (Count III). (*Id.* ¶¶ 26, 29, 31.) Presently before us is Defendant's motion to dismiss Counts I and II for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 66.) Plaintiff's motion to compel arbitration (Dkt. No. 68) and Defendant's motion to strike (Dkt. No. 75) are also pending. For the reasons stated below, we grant

Defendant's motion to dismiss and deny Plaintiff's motion to compel. We deny Defendant's motion to strike as moot.

## BACKGROUND

We draw the following facts directly from the complaint and accept them as true for the purposes of the present motion. Pine Top was an Illinois-based insurance company. (FAC ¶ 8.) At various times between 1977 and 1986, Pine Top and Defendant entered into treaties of reinsurance ("Policies"),[1] under which Defendant agreed to pay specified shares of Pine Top's liabilities on underlying insurance contracts, in exchange for premium payments and other recoveries. (*Id.* ¶¶ 10, 12.) Pine Top performed all of its obligations under the Policies. (*Id.* ¶ 15.)

In 1986, the Circuit Court of Cook County placed Pine Top in liquidation and appointed the Director of Insurance and its Liquidator. (*Id.* ¶ 8.) The Liquidator took possession of Pine Top's assets and operations, and continued the administration of claims. (*Id.* ¶ 16.) When the Liquidator determined that "all or substantially all of the events [that] could affect the amount due to or from Defendant had been accounted for," he provided Defendant with a final account and demanded payment of the net amount due under the Policies. (*Id.* ¶ 18.) Defendant failed to pay. (*Id.*)

On November 16, 2010, Plaintiff and the Liquidator entered into a Purchase Agreement and Assignment of Debt ("Purchase Agreement" or "P.A."). (*Id.* ¶ 6.) The Purchase Agreement

---

[1] In the Purchase Agreement and Assignment of Debt at issue in this case, the term "Policies" refers to the reinsurance treaties between Pine Top and Defendant. (Dkt. No. 67-1, cl. 1.1.) Although the parties generally refer to them as "treaties," for the sake of clarity we will remain consistent with the terms used in the Purchase Agreement.

assigned to Plaintiff "all rights, title, benefit and interest in the Debts [owed by Defendant to Pine Top under the Policies] absolutely and with full title." (P.A. cl. 2.1 (Dkt. No. 67-1).) It specified that the assignment of debt "shall not be construed as a novation or assignment of the Policies" (*Id.* cl. 2.4.1), and defined the scope of Plaintiff's authority as assignee. (*Id.* cl. 5).

After executing the Purchase Agreement, Plaintiff demanded that Defendant submit to arbitration to resolve the outstanding debts. (FAC ¶ 24.) Defendant refused to arbitrate the dispute (*Id.*), and Plaintiff initiated this lawsuit on August 11, 2012. (Dkt. No. 1.) We dismissed the original complaint without prejudice, and Plaintiff filed the present amended complaint. (Dkt. No. 55, 59-1.) While Defendant's motion to dismiss the FAC was still pending, Plaintiff filed a motion to compel arbitration, which seeks identical relief as Count I of the FAC. (Dkt. No. 68.)

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks enough facts "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949–50 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964.

### ANALYSIS

### I.  Petition to Compel Arbitration (Count I)

In Count I, Plaintiff seeks to compel arbitration. (FAC ¶ 26.) Pine Top and Defendant included binding arbitration clauses in the Policies. (*Id.* ¶¶ 14, 20.) The issue here is whether the Purchase Agreement assigned Plaintiff the right to enforce those clauses. We dismissed the original complaint because we found that there was no assignment of the right to compel arbitration. (Dkt. No. 55 at 8.) The new allegations in the FAC do not change our opinion.[2]

---

[2] Banco argues that the "law of the case" doctrine requires dismissal of Count I, but we decline to apply it here. That doctrine is discretionary, and "merely expresses the practice of courts generally to refuse to open what has been decided, not a limit on to their power." *Redfield v. Cont'l Cas. Corp.*, 818 F.2d 596, 605 (7th Cir. 1987) (citing *Messenger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740 (1912)). Having granted PTRIL leave to file the FAC, we think it is appropriate to evaluate its sufficiency independently of our dismissal of the original complaint.

In its original complaint, Plaintiff based its right to compel arbitration on the provisions of the underlying Policies, not the terms of the Purchase Agreement itself. (Dkt. No. 55 at 6.) In our order dismissing the complaint, we observed that the Purchase Agreement expressly provided that it "shall not be construed to be a novation or assignment of the Policies." (*Id.*; P.A. cl. 2.4.1.) Accordingly, the scope of Plaintiff's rights as assignee are defined by the terms of the Purchase Agreement, not the underlying Policies. (Dkt. No. 55 at 6–7.) Our reading of the Purchase Agreement led us to conclude that Plaintiff had not acquired the right to compel arbitration. (*Id.*)

In the FAC, Plaintiff alleges that the right to compel arbitration is included, at least implicitly, in the terms of the Purchase Agreement. Specifically, Plaintiff states:

> In entering into the assignment, it was the intent of the Liquidator of Pine Top to maximize the assets of the Pine Top estate by transferring to the assignee all of the rights which Pine Top would have had in connection with the collection of the balances, including the right to arbitrate claims to which an enforceable arbitration clause applied, but subject to all defenses and rights of offset to which the debtors were entitled. The Purchase Agreement transferred to Plaintiff "full authority to do all things necessary or useful to enforce the Debts," which provision was intended to encompass all rights belonging to Pine Top or the Liquidator to bring suit or demand arbitration in connection with the debts. (FAC ¶ 7.)

There are two problems with this allegation. First, it is axiomatic under Illinois law that courts interpret contracts according to the objective intent of the parties, as determined by the unambiguous language of the written instrument, not by subsequent statements of subjective intent. *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 784 F. Supp. 2d 949, 958 (N.D. Ill. 2011) (citing *Empro Mfg. Co., Inc. v. Ball–Co Mfg., Inc.,* 870 F.2d 423, 425 (7th Cir.1989)); *Interway, Inc. v. Alagna,* 85 Ill. App. 3d 1094, 1098, 407 N.E.2d 615, 619 (1st Dist.1980). As we explained in *Citadel Group*, "the use of the term 'intent' is misleading insofar as it implies a

subjective inquiry into the parties' state of mind at the time of contracting. Instead, in the case of a written contract, a court evaluates the parties' intent based on the outward expression of their intent in the form of the written contract." 784 F. Supp. 2d at 958. In other words, it is what the parties actually write that matters, not what they later claim to have meant.

The Seventh Circuit's holding on this point in *Empro* is particularly instructive. In that case, the appellant, Empro, alleged that the parties intended a particular letter to be a binding contract, and argued that its allegations of intent were sufficient to survive a motion to dismiss. 870 F.2d at 424–25. The Seventh Circuit rejected that position:

> Empro insists on appeal that the binding effect of a document depends on the parties' intent, which means that the case may not be dismissed—for Empro says that the parties intended to be bound, a factual issue. Empro treats "intent to be bound" as a matter of the parties' states of mind, but if intent were wholly subjective there would be no parol evidence rule, no contract case could be decided without a jury trial, and no one could know the effect of a commercial transaction until years after the documents were inked. That would be a devastating blow to business. Contract law gives effect to the parties' wishes, but they must express these openly. Put differently, "intent" in contract law is objective rather than subjective . . . As the Supreme Court of Illinois said in *Schek v. Chicago Transit Authority,* 42 Ill.2d 362, 364, 247 N.E.2d 886, 888 (1969), "intent must be determined solely from the language used when no ambiguity in its terms exists." *Id*.

Here, Plaintiff does not argue that the Purchase Agreement is ambiguous, and we conclude from our own review that its terms are clear. Instead, Plaintiff states as a factual matter that "the Liquidator meant to sell every right of Pine Top that could yield cash for the policyholders, whereas Plaintiff meant to buy every right that could make it easier to realize on those receivables." (Resp. at 9; FAC ¶ 7.) According to Plaintiff, "[s]ince allegations of intent are allegations of fact, and since, for purposes of a 12(b)(6) motion, all such allegations, unless they fail the *Twombly* 'plausibility' standard, must be taken as true for purposes of this motion,"

6

we must accept as true that Plaintiff and the Liquidator intended to transfer Pine Top's right to compel arbitration. (Resp. at 5.) This is precisely the line of argument that the Seventh Circuit prohibited in *Empro*. In determining intent, we look to the unambiguous language of the contract, not to belated explanations of what the contracting parties meant to do.[3]

Thus, we turn to the language of the Purchase Agreement itself. This brings us to the second problem with PTRIL's allegation—it points to a single isolated provision in Clause 5.2, without reference to its context in the contract as a whole. (FAC ¶ 7.) But "because words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others. The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself." *Pamado, Inc. v. Hedinger Brands, LLC*, 785 F. Supp. 2d 698, 706 (N.D. Ill. 2011); *see also Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 2010) ("Contracts must be read as a whole, and the meaning of separate provisions should be considered in light of one another and the context of the entire agreement."). Standing alone, it is reasonable to read the phrase "full authority to do all things necessary or useful to enforce the Debts" as encompassing the authority to compel arbitration. In light of the surrounding provisions of the contract, however, this reading is not plausible.

---

[3] In addition to the allegations in the FAC, Plaintiff submitted two affidavits along with its motion to compel arbitration. (Dkt. Nos. 70, 71.) They include statements by counsel for the Liquidator and a managing member of PTRIL to the effect that these parties intended Clause 5.2 to assign all of Pine Top's rights to Plaintiff. (Dkt. No. 70 ¶ 3; Dkt. No. 71 ¶ 3.) Defendant disputes the weight and admissibility of the affidavits (Dkt. No. 77 at 5–10), but we need not address Defendant's concerns here. Even if we accept the affidavits at face value, they would not affect our decision, because they are identical in substance to the allegations in the FAC. As expressions of subjective intent, they cannot overcome the unambiguous language of the written Purchase Agreement.

As we explained above, we look to the Purchase Agreement to determine what rights Plaintiff acquired. Clause 5 ("Authority of the Assignee") divides Plaintiff's authority into two parts: the right to obtain information and the right to collect debts. (*Id*. cl. 5.1, 5.2.) Clause 5.1 allows Plaintiff to obtain information "relating to the Debts or any Policies from which such Debts may have arisen, to the same extent and under the same conditions as the Assignor could have done so in an exercise of his contractual rights." (*Id*. cl. 5.1.) Presumably, if the parties to the Purchase Agreement also intended to transfer Pine Top's full contractual rights related to the collection of debts, it would have used similar language in the second part of Clause 5. Instead, Clause 5.2 lists four specific actions that Plaintiff was authorized to take: ". . . Assignor authorizes Assignee to demand, sue for, compromise and recover all amounts as now are, or may hereafter become, due and payable on account of the Debts." (*Id*. cl. 5.2.)

Under their ordinary meanings, none of these four actions include the right to enforce the arbitration clauses of the Policies. Clause 5.2 allows Plaintiff to request payment from Banco (*demand*), file a law suit against Banco (*sue for*), reach a settlement with Banco (*compromise*), and collect the money owed from Banco (*recover*). We see no plausible reason why the contracting parties would choose to list these, and only these, four specific actions, if they really intended to convey all of Pine Top's rights to collect debts under the Policies. Clause 5.1 makes abundantly clear that when they intended to transfer full contractual rights, they used language that plainly expressed that intent.

Plaintiff hangs its entire argument on the sentence that follows the list of four authorized actions: "Assignor grants to Assignee full authority to do all things necessary or useful to enforce the Debts and Assignor's rights thereunder *pursuant to this Assignment Agreement*. (*Id*.

8

cl. 5.2 (emphasis added).) Notably, in the FAC Plaintiff truncates this quote in order to remove the last part of the sentence. (FAC ¶ 7.) Plaintiff apparently wants us to read its abridged form of this provision as a catch-all, meaning essentially that the Purchase Agreement allows Plaintiff to take the four expressly authorized actions, plus everything else that Pine Top could have done under the Policies. We reject this reading. If the contracting parties intended to convey all of Pine Top's rights, there is no reason to expressly authorize four specific actions. Moreover, the part of the sentence that Plaintiff omits is significant—it clarifies that "all things necessary and useful" are limited to the scope of Plaintiff's authority under the Purchase Agreement. In other words, this sentence does not expand Plaintiff's authority beyond the four permissible actions, it allows Plaintiff to take the steps necessary to carry them out.

Furthermore, our understanding of Clause 5.2 is consistent with its last sentence: "Nothing in this Agreement shall create any obligations on the part of the Assignee to any person other than the Assignor." (P.A. cl. 5.2.) The phrase "any person other than the Assignor" necessarily includes Defendant, yet the arbitration clauses in the Policies are reciprocal. Either signatory to the Policies could have compelled the other to submit disputes to arbitration. (Dkt. No. 9-1 at 14 (". . . such differences shall be submitted to arbitration upon the request of one of the contracting parties.").) It is hard to see how Plaintiff intended to bind itself to these arbitration clauses,[4] when it explicitly shielded itself from obligations to anyone other than the Liquidator. To the contrary, by specifically providing that the Purchase Agreement was not an

---

[4] Plaintiff does not allege (nor could it) that it acquired the right to compel without the corresponding obligation to submit to arbitration. Instead, Plaintiff states that "[b]y virtue of having accepted assignment of the rights of Pine Top under the [Policies], Plaintiff is obligated to comply with the requirements of the [Policies], including their arbitration clauses." (FAC ¶ 22.)

9

assignment of the Policies containing the arbitration clauses (P.A. cl. 2.4.1), and then expressly disavowing any obligations to Defendant (P.A. cl. 5.2.), Plaintiff appears to have deliberately avoided the possibility of arbitration when it executed the Purchase Agreement.

Plaintiff expresses a sense of incredulity that anyone could read the Purchase Agreement as omitting the right to compel arbitration. (Resp. at 1–2 (describing itself as "startled" by our previous dismissal and stating that the Liquidator was "frankly baffled as to why the Court would find it logical that they would attempt to retain Pine Top's reinsurance rights.").) According to Plaintiff, "[i]n order to conclude that it was 'plausible' that the Liquidator deliberately withheld the right to arbitrate from the package of rights he assigned to PTRIL, the Court would have to postulate some rational reason why it would do so." (*Id.* at 8.)

Plaintiff misunderstands our role. It is not our burden to postulate some rational reason for the business decisions of the parties before us. Rather, our task is to determine the intent of the contracting parties based on the language they chose to put in writing. If Plaintiff and the Liquidator actually intended to transfer all of Pine Top's rights under the Polices, they could have easily included straightforward language to that effect. Indeed, that is precisely what Plaintiff and the Liquidator did in Clause 5.1, for the particular purpose of collecting information. We therefore conclude that the deliberate use of more limiting language in Clause 5.2 evinces an intent to convey only those rights expressly granted. *McHenry Sav. Bank v. Autoworks of Wauconda, Inc.*, 399 Ill. App. 3d 104, 111, 924 N.E.2d 1197, 1205 (2010) ("We . . . presume that each contractual provision was inserted deliberately and for a purpose consistent with the parties' intent."); *Bank of Am. Nat. Trust & Sav. Ass'n v. Schulson*, 305 Ill. App. 3d 941, 946, 714 N.E.2d 20, 24 (1999).

Because the Purchase Agreement did not convey Pine Top's right to compel arbitration to Plaintiff, we grant Defendant's motion to dismiss Count I. For the same reason, we also deny Plaintiff's pending motion to compel arbitration. (Dkt. No. 68.) We deny Defendant's pending motion to strike (Dkt. No. 75) as moot.

## II. Equitable Estoppel (Count II)

In Count II, Plaintiff alleges that Defendant is estopped from opposing arbitration, because it relies on certain provisions of the Policies in its affirmative defenses to the breach of contract claim (Count III). (FAC ¶¶ 27–29.) According to Plaintiff, "a party may not seek to enforce the helpful terms of a contract against a non-signatory, while denying him the benefit of other terms that would protect him . . ." (Resp. at 10.) Defendant argues that Illinois state courts have rejected Plaintiff's estoppel theory, and even if the theory existed under Illinois law, it would not apply in these circumstances. (Mem. 13–15; Reply 13–15.)

Defendant relies on two Illinois Appellate Court cases, *Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508, 812 N.E.2d 534 (5th Dist. 2004), and *Peach v. CIM Insurance Corporation*, 352 Ill. App. 3d 691, 816 N.E.2d 668 (5th Dist. 2004). In both cases, the court looked to federal appellate court decisions that described and accepted the estoppel theory that Plaintiff advances here: "[E]quitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory . . ." *Ervin,* 349 Ill. App. 3d at 515, 812 N.E.2d at 541 (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999); *Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267–68 (5th Cir. 2004)); *Peach*, 352 Ill. App. 3d at 706, 816 N.E.2d at 673. Both *Ervin* and *Peach* explicitly rejected this theory as an unwarranted expansion of the

11

doctrine of equitable estoppel, as defined by Illinois law. *Ervin,* 349 Ill. App. 3d at 515, 812 N.E.2d at 542 ("We decline to follow federal decisions that adopt this expanded interpretation of equitable estoppel . . . "); *Peach*, 352 Ill. App. 3d at 707, 816 N.E.2d at 674. According to Defendant, these cases are dispositive and require dismissal of Count II.

Plaintiff, however, points out two more recent cases from this district accepting the same estoppel theory that Illinois courts rejected in *Ervin* and *Peach*. *See Levin v. NC12, Inc.*, No. 10 C 01606, 2011 WL 2582138, at *5 (N.D. Ill. June 29, 2011); *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 713 F. Supp. 2d 734, 745 (N.D. Ill. 2010). Both courts followed the Seventh Circuit decision in *Hughes Masonry Company, Inc. v. Greater Clark County School Building Corporation* to reach the conclusion that "[a] non-signatory to an agreement to arbitrate can compel arbitration when a signatory's claims are grounded in or intertwined with claims under the agreement that subjects the signatory to arbitration." *Pa. Chiropractic Ass'n*, 713 F. Supp. 2d at 745 (citing *Hughes Masonry*, 659 F.2d 836, 838 (7th Cir. 1981)); *Levin*, 2011 WL 2582138, at *5.[5]

Thus, there appears to be a split between the state and federal courts in Illinois on this issue. Under the particular circumstances of this case, however, we do not need to reconcile the apparent contradiction between the state and federal decisions, or determine which should apply here. Because even if we follow the federal cases that Plaintiff cites, the estoppel theory they describe does not prohibit Defendant from opposing arbitration.

---

[5] Additionally, Plaintiff cites a number of Illinois state cases that are inapposite, because they involve non-signatories that derive their right to enforce arbitration through particular legal relationships that are not applicable to this case. (Resp. at 12.)

12

The Purchase Agreement did not assign the Policies to Plaintiff. (P.A. cl. 2.4.1.) Accordingly, Defendant may not pursue any claims against Plaintiff under the terms of the Policies, or impose upon Plaintiff any of Pine Top's contractual obligations. But it is undisputed that Plaintiff has the right to collect any debts that Defendant owes Pine Top under the Policies. It is inevitable, therefore, that the amount and validity of those debts will be an issue. The parties will only be able to address that issue with reference to the Policies.

Thus, there is nothing inequitable about allowing Defendant to refer to the Policies to support its position about the amount and validity of the debts, while at the same time opposing arbitration. The parties stand on equal footing in this respect—both may rely on the Policies to establish the debts that Plaintiff is authorized to collect under the Purchase Agreement, but neither is otherwise bound to the terms of the Policies. We therefore hold that Defendant is not estopped from opposing arbitration, and grant its motion to dismiss Count II.

## CONCLUSION

For the reasons explained above, we grant Defendant's motion to dismiss and deny Plaintiff's motion to compel. We deny Defendant's motion to strike as moot. It is so ordered.

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　Honorable Marvin E. Aspen
　　　　　　　　　　　　　　　　　　　　U.S. District Court Judge

Date: June 11, 2013