UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| PINE TOP RECEIVABLES OF ILLINOIS, LLC, a limited liability corporation | ) ) ) | No. 12-CV-6357 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Judge Marvin E. Aspen |
| BANCO DE SEGUROS DEL ESTADO, A Statutory corporation wholly owned by the Sovereign Republic of Uruguay, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
BANCO DE SEGUROS DEL ESTADO'S MOTION FOR SUMMARY JUDGMENT**

**February 18, 2016**

Ernesto R. Palomo (# 6278186)
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
(312) 443-0477 (E.R. Palomo)
FAX -- (312) 896-6477 (E.R. Palomo)
epalomo@lockelord.com

Robert A. Badgley (# 6206520)
KARBAL COHEN ECONOMOU SILK DUNNE
 LLC
150 South Wacker Drive
Chicago, Illinois 60606
(312) 431-3634 (R.A. Badgley)
FAX – (312) 431-3670 (R.A. Badgley)
rbadgley@karballaw.com

Attorneys for Defendant
*Banco De Seguros Del Estado*

CHI1 2183593v.2

## TABLE OF CONTENTS

Page

Preliminary Statement ..................................................................................................................1

Statement of Undisputed Facts ....................................................................................................2

Background ..................................................................................................................................2

The Pine Top-Banco Treaties Set Forth When Payment is Due ..................................................3

The Alleged Unpaid Billings ........................................................................................................4

Legal Argument ............................................................................................................................5

I.        All Billings Issued Prior To The July 31, 2008 Billings Are Time-Barred .............5

  A.        The Pine Top-Banco Treaties Set Forth The Accrual Date. ...............................7

  B.        PTRIL's "Open Account" Theory Lacks Merit. ................................................10

  C.        The Insurance Code Does Not Toll The Statute of Limitations. ......................11

II.       PTRIL Is Not Entitled To Interest .......................................................................14

Conclusion        ........................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allstate Ins. Co. v. Empl's Reins. Corp.*,
 441 F. Supp. 2d 865 (N.D. Ill. 2005) ............................................................................................8

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ......................................................................................................................5

*Colonial Assur. v. Mercantile & Gen. Reinsurance Co.*,
 130 F. App'x 607 (3d Cir. 2005) .................................................................................................13

*Continental Cas. Co. v. Stronghold Ins. Co.*,
 77 F.3d 16 (2d Cir. 1996) ..........................................................................................................7, 8

*Gerill Corp. v. Jack L. Hargrove Builders, Inc.*,
 128 Ill. 2d 179 (1989) ...................................................................................................................8

*Gerling Global Reins. Corp. v. Safety Mutual Casualty Corp.*,
 No. 79 Civ. 4422, 1980 U.S. Dist. LEXIS 12078 (S.D.N.Y. Jun. 26, 1980) ..........................9, 10

*in BCS Ins. Co. v. Guy Carpenter & Co.*,
 2005 WL 3371730 (N.D. Ill. Dec. 8, 2005) ..................................................................................8

*Keehn v. Excess Ins. Co. of Am.*,
 129 F.2d 503 (7th Cir. 1942) ................................................................................................ passim

*In re Liquidations of Reserve Ins. Co.*,
 122 Ill. 2d 555 (1988), *superseded by statute on other grounds* ................................................7

*Miller v. Cinnamon*,
 168 Ill. 447 (1897) ......................................................................................................................10

*In re Mortgage Escrow Deposit Litig.*,
 Nos. 90 C 5816 ...........................................................................................................................10

*O'Connor v. Ins. Co. of N. Am.*,
 622 F. Supp. 611 (N.D. Ill. 1985) ...............................................................................................12

*In re Oil Spill by the Amoco Cadiz*,
 954 F.2d 1279 (7th Cir. 1992) ..............................................................................................14, 15

*OneBeacon Ins. Co. v. Aviva Ins. Ltd.*,
 No. 10-CV-7498, 2013 WL 2147958 (E.D. Pa. May 17, 2013) ...................................................9

*Republic Ins. Co. v. Banco de Seguros del Estado*,
 No. 10-CV-5039, 2013 WL 3874027 (N.D. Ill. July 26, 2013) ..........................................5, 9, 11

*Riddlesbarger v. Hartford Ins. Co.*,
  74 U.S. 386 (1868) ............................................................................................................... 6

*Rodgers v. Roulette Records, Inc.*,
  677 F. Supp. 731 (S.D.N.Y. 1988) ................................................................................ 11, 12

*Selcke v. New England Ins. Co.*,
  995 F.2d 688 (7th Cir. 1993) ............................................................................................. 12

*Superintendent of Financial Services. v. Guarantee Ins. Co.*,
  No. 450023/13, 2013 WL 3008633 (N.Y. Sup. Ct. Jun. 10, 2013) ................................ 13, 14

*Transport Ins. Co. v. TIG Ins. Co.*,
  202 Cal. App. 4th 984 (Cal. App. Ct. 2012) ....................................................................... 10

*Travelers Cas. & Sur. Co. v. Bowman*,
  229 Ill. 2d 461 (2008) .......................................................................................................... 8

*Viirre v. Zayre Stores, Inc.*,
  212 Ill. App. 3d 505 (Ill. App. Ct. 1991) ............................................................................ 13

**STATUTES**

215 ILCS 5/194 ......................................................................................................................12, 13

215 ILCS 5/206 ............................................................................................................................ 12

215 ILCS 100/1 .............................................................................................................................. 8

735 ILCS 5/13-206 ........................................................................................................................ 7

N.Y. Ins. Law § 7427 .................................................................................................................. 13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) ..................................................................................................................... 5

Local Rule 56.1(a)(3) .................................................................................................................... 1

**PRELIMINARY STATEMENT**

PTRIL[1] paid pennies on the dollar to buy the supposed right to collect stale and dubious reinsurance claims once owned by a now-defunct insurance company, Pine Top. These claims were stale and time-barred when PTRIL bought them, and they are even more so today.

Now that discovery has been completed, it is clear that PTRIL's allegations are unsupportable, and that PTRIL will not be able to prove its entitlement to the amounts at issue. Based on the record established in this action, this Court can reject PTRIL's purported reinsurance claims for a whole host of reasons, including:

- From 1977 to 1993, all correspondence from Pine Top to Banco had to pass from Pine Top (in Arizona or Illinois) to a broker in California or Canada, to a sub-broker in London, to another sub-broker in Argentina, and, finally, to Banco in Uruguay. (B-SOF ¶¶ 30-35.)[2] All payments from Banco to Pine Top traveled through the same entities in reverse order. (*Id*. ¶ 36.) Due to the passage of time, there is no evidence that Banco actually received all of the account statements at issue in this action. (*Id*. ¶ 70.) Further, Pine Top breached the notice and billing requirements of the Treaties by failing to submit any account statements to Banco for nearly fifteen years. (*Id*. ¶¶ 8, 40-44.) Thus, some of PTRIL's claims should be denied under principles of late notice. *See Keehn v. Excess Ins. Co. of Am.*, 129 F.2d 503 (7th Cir. 1942).

- The evidence that remains in Banco's files suggests that some of the account statements at issue in this action were paid by Banco. (B-SOF ¶¶ 59-66.) Given the age of the transactions at issue, and the fact that any Banco payment would have travelled through three entities before the funds reached Pine Top, Banco is unable to prove those payments made it to Pine Top. (*Id*. ¶ 62.) Moreover, Banco cannot confirm that its payment records are complete. (*Id*. ¶¶ 60-61.) It is possible that additional billings dated 1993 and earlier were also paid by Banco. (*Id*. ¶¶ 59-66.)

- For all of the account statements submitted to Banco under one of the Treaties, the evidence demonstrates that Pine Top and the Liquidator were billing Banco for 4% of Pine Top's liabilities instead of 2%. (*Id*. ¶¶ 67-69.) Therefore, Banco's alleged debt under that treaty should be reduced by 50%. (*Id*. ¶ 70.)

- For some of the account statements at issue, PTRIL has no evidentiary support other

---

[1] All undefined terms shall have the same meaning as set forth in Banco's Local Rule 56.1(a)(3) Statement of Material Facts.

[2] Citations to "B-SOF" refer to the Banco's Local Rule 56.1(a)(3) Statement of Material Facts.

1

      than a listing in a spreadsheet provided by Pine Top's Liquidator. (*Id.* ¶¶ 48-49, 51.) Moreover, for some of the account statements, PTRIL's calculation of the amounts owed do not match the Liquidator's calculations on the actual account statement. (*Id.* ¶ 50.) Therefore, PTRIL's calculations are not trustworthy. (*Id.* ¶ 53.)

- PTRIL did not engage in any efforts to determine whether any of the account statements concerned claims that are not covered, or are expressly excluded, under the Treaties. (*Id.* ¶ 52.) Therefore, it is impossible for the parties, or this Court, to determine whether the underlying claims are even valid reinsurance claims.

The Court need not consider these (and other) compelling reasons, however, for purposes of this Motion. This Motion addresses a different and more fundamental reason why PTRIL's claims should be summarily denied: most of the alleged reinsurance claims at issue in this action were ***more than twenty years old*** at the time PTRIL filed this action. (*Id.* ¶¶ 7, 38-43, 45-46.)

Banco asks this Court to rule that all of the account statements issued by Pine Top or the Liquidator before the July 31, 2008 billings be rejected as barred under the applicable Illinois statute of limitations. There are no disputed issues of fact regarding the age of these account statements, thus making this an appropriate situation for summary judgment.

## STATEMENT OF UNDISPUTED FACTS

### Background

Banco engages in the business of insurance and reinsurance. (*Id.* ¶ 5.) At various times between 1977 and 1984, Banco agreed to reinsure non-party Pine Top under five different reinsurance contracts (collectively, the "Treaties"). (*Id.*)

On or about January 16, 1987, Pine Top was placed into liquidation and the Director of Insurance was appointed as Liquidator. (*Id.* ¶ 6.) Once Pine Top went into liquidation, the Liquidator assumed the duty to perform each of Pine Top's obligations under the Treaties. (*Id.*)

From June 1, 1983 to November 5, 1993, either Pine Top or the Liquidator (after January 16, 1987) sent at least 132 account statements to Banco through the intermediaries designated in the Treaties. (*Id.* ¶ 7.) Then, the Liquidator stopped billing Banco for nearly 15 years. From

2

about November 1993 through July 30, 2008, the Liquidator did not send any new account statements to Banco under four of the five[3] Treaties. (*Id*. ¶ 8.)

On July 31, 2008, the Liquidator sent 15 new bills to Banco for claims booked by the Liquidator from "1993 to July 1999." (*Id*. ¶¶ 9, 44.) The 2008 bills reflect that Banco is owed a credit in the amount of $227,750.55 for claims that came in from 1993 to 1999. (*Id*.) Through the July 31, 2008 correspondence, the Liquidator also demanded payment on the allegedly unpaid account statements sent in 1993 and earlier. (*Id*.) Banco disputed the Liquidator's demand and provided reasons for its refusal to pay, including that the purported reinsurance claims are decades old and barred under the Illinois statute of limitations. (*Id*. ¶ 10.)

This is where PTRIL enters the picture. In November 2010, PTRIL purchased Pine Top's reinsurance receivables from the Liquidator. (*Id*. ¶ 11.) PTRIL paid $453,321.33 to purchase these assets valued at $14,004,825.39 (including the alleged Banco balances). (*Id*.) It is clear that the Liquidator sold these substantial assets for roughly three cents on the dollar because the Liquidator knew that the balances were stale and uncollectible. (*Id.* ¶¶ 12-13.)

PTRIL attempted to collect from Banco, but Banco again refused to pay the time-barred claims. This action followed.

### The Pine Top-Banco Treaties Set Forth When Payment is Due

All five of the Treaties contain provisions that establish a procedure that Pine Top must follow as a condition precedent to Banco's liability under the Treaties. The four quota share treaties required quarterly billing under the following substantially identical terms:

> 1. The accounts under this Agreement shall be drawn up quarterly as at March 31st, June 30th, September 30th and December 31st of each year; they shall be

---

[3] There were a few stray billings under the Variable Quota Share Treaty during this time period. However, as PTRIL has admitted, Pine Top actually owes Banco $34,808.99 under this treaty. (B-SOF ¶ 47.)

> sent by the Company to the Reinsurer within three months of the end of each such quarter, and the balance resulting therefrom shall likewise be settled by the debtor party within three months of the end of each such quarter. . . .
>
> 3. The Reinsurer shall have one month from the date of receipt of the accounts either to confirm agreement or to make any observations relative thereto.
>
> 4. In either case the balance shown in the accounts shall become payable by the debtor party as provided for in paragraph 1. above, and any corrections becoming necessary as a result of error on the part of the Company shall be adjusted in the next account.

(*Id*. ¶¶ 18-25.) Under this provision, Pine Top was required to submit a quarterly account statement to Banco within three months of the end of each quarter, with the net amount owing indicated in the statement. As PTRIL has admitted, under this provision, the amount payable by either party was also due and payable within three months of the end of each quarter. (*Id*. ¶¶ 19, 21, 23, 25.) In other words, the payment was due immediately.

The Excess of Loss Treaty also required immediate payment. The relevant contract wording for this treaty is as follows:

> 2. The Reinsurer agrees to abide by the loss settlements of the Company, such settlements to be considered as satisfactory proofs of loss, and amounts falling to the share of the Reinsurer shall be immediately payable to the Company by him upon reasonable evidence of the amount paid by the Company being presented to the Reinsurer through H.A. Enan & Co. (Reinsurance) Ltd. . . .

(*Id*. ¶¶ 26-27.) As PTRIL has admitted, the amount payable by the reinsurer was due as soon as proof of payment was submitted to the contract intermediary, Enan. (*Id*. ¶ 27.)

### The Alleged Unpaid Billings

PTRIL alleged, prior to the start of depositions, that Banco owed Pine Top $2,262,770.47 under the Treaties. (*Id*. ¶ 45.) PTRIL's consultant, Anthony Peck, prepared a spreadsheet that contained an itemized list of all 147 account statements that PTRIL believes have not been paid

4

by Banco.[4] (*Id*. ¶¶ 38-40.) All but 15 of these account statements have a "Billing Date" of November 5, *1993* or earlier. (*Id*. ¶¶ 41-43.) Combined, these 132 account statements reflect a balance in favor of Pine Top in the amount of $2,490,521.02. (*Id*. ¶ 43.) These account statements are plainly barred under the applicable Illinois statute of limitations.

The 15 account statements sent by the Liquidator on July 31, 2008 are not time-barred, but they reflect a balance in favor of **Banco** in the amount of $227,750.55. (*Id*. ¶ 44.) Hence, PTRIL is not entitled to any recovery in this action.

PTRIL knew from the outset of this case that its stale claims would not survive a motion for summary judgment. That is why it persisted (all the way to the United States Supreme Court) in its efforts to shift this case to arbitration—where there is at least a remote possibility that the arbitrators will ignore the statute of limitations. It is now time to put PTRIL's claims to rest.

## LEGAL ARGUMENT

Summary judgment, or partial summary judgment, is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As shown below, Banco meets these standards.

**I.    ALL BILLINGS ISSUED PRIOR TO THE JULY 31, 2008 BILLINGS ARE TIME-BARRED.[5]**

Statutes of limitation play an important and necessary role in the law and the orderly

---

[4] PTRIL now appears to have acknowledged that there is evidence that some of these account statements were paid by Banco several decades ago. (B-SOF ¶¶ 59-62.)

[5] Technically, the cutoff date for purposes of determining whether a claim is time-barred is May 13, 2002—ten years and three months from the date PTRIL filed this action. However, PTRIL admitted that no account statements were issued after January 1, 2002 other than the July 31, 2008 account statements. (B-SOF ¶ 8 and Appendix Ex. 6 at 2 & Ex. A.)

5

functioning of commerce. They are premised upon fundamental notions of due process and fairness to the defendant. As the Supreme Court explained nearly 150 years ago:

> [Statutes of limitation] are founded upon the general experience of mankind that claims, which are valid, are not usually allowed to remain neglected. The lapse of years without any attempt to enforce a demand creates, therefore, a presumption against its original validity, or that it has ceased to subsist. This presumption is made by these statutes a positive bar; and they thus become statutes of repose, protecting parties from the prosecution of stale claims, when, by loss of evidence from death of some witnesses, and the imperfect recollection of others, or the destruction of documents, it might be impossible to establish the truth. The policy of these statutes is to encourage promptitude in the prosecution of remedies.

*Riddlesbarger v. Hartford Ins. Co.*, 74 U.S. 386, 390 (1868).

The fundamental due process precepts underlying statutes of limitations are present in this case and warrant application of time bar principles. Due to the extraordinary passage of time, it is impossible for Banco to confirm whether it already paid some, or even most, of these stale reinsurance claims. (B-SOF ¶¶ 59-62.) Banco and the Liquidator attempted to settle their obligations under the Treaties in the early 1990s. (*Id*. ¶¶ 63-66.) Due to the passage of time, neither party is able to muster any witness who can testify about how those discussions concluded. (*Id*.) It is possible that the parties commuted these treaties 20 years ago, but no longer have the records to prove it. (*Id*. ¶ 65.) Further, critical witnesses and documents are now missing, and the parties are unable to reconstruct anything resembling an adequate record. (*Id*. ¶¶ 14-16, 30-35, 48-53, 60-61, 67-70.)[6] Finally, evidence of whether these are even valid, covered reinsurance claims in the first place is long gone, thanks in part to the Liquidator's decision to ignore Banco for 15 years (from 1993 to 2008). (*Id*. ¶ 52.) In short, this case

---

[6] To make matters worse, during the pendency of this action, the Liquidator destroyed documents that might have shed light on these issues. (B-SOF ¶¶ 14-16.) As this Court already has acknowledged, PTRIL is responsible for any lost documents. (D.E. 110 at 3-5.) Indeed, the Court may be justified in drawing an inference that the documents destroyed contained information that is adverse to PTRIL's interests.

illustrates precisely why statutes of limitations exist throughout civilized legal systems.

This Court should summarily dismiss all account statements sent prior to the July 31, 2008 billings. There is no dispute as to the age of these old reinsurance claims. The only dispute is whether, as PTRIL will argue, the statute of limitations did not begin to run on PTRIL's cause of action until the Liquidator sent so-called "final billing statements" to Banco on July 31, 2008. As shown below, PTRIL's arguments are meritless and must be rejected.

### A. The Pine Top-Banco Treaties Set Forth The Accrual Date.

PTRIL's action to recover from Banco is barred unless it was "commenced within 10 years next after the cause of action accrued." 735 ILCS 5/13-206; *Continental Cas. Co. v. Stronghold Ins. Co.*, 77 F.3d 16, 19 (2d Cir. 1996) (reinsurance contracts are subject to the statute of limitations for actions on written contracts). No court has addressed the specific question: under Illinois law, when does a cause of action for indemnity promised in a reinsurance contract accrue? Even so, the answer is clear.

The seminal case on this issue is the Second Circuit's opinion in *Continental.* In that case, the court explained:

> Reinsurance policies are express contracts of indemnity against loss. . . . As such, the claim generally accrues when the indemnitee actually suffers a loss. …
>
> An express contract for indemnity, however, remains a contract. Hence the parties are free, within the limits of public policy, to agree upon conditions precedent to suit. … Thus, the rule has evolved in insurance cases that the cause of action accrues "when the loss insured against becomes due and payable under the policy. … We see no reason not to apply the "due and payable" insurance rule to reinsurance policies; reinsurance, after all, is simply insurance for insurance companies. … The timeliness of Continental's claims thus turns on a fairly simple question: ***when were its losses due and payable under the reinsurance policies***?

77 F.3d at 19-20 (internal citations omitted) (***emphasis*** added).

*Continental* is fully consonant with Illinois law. Under Illinois law, a reinsurance contract is also considered a contract of indemnity. *In re Liquidations of Reserve Ins. Co.*, 122

7

Ill. 2d 555, 564 (1988) ("a contract of reinsurance is not one of insurance but simply one of indemnity"), *superseded by statute on other grounds*, 215 ILCS 100/1, *as recognized in BCS Ins. Co. v. Guy Carpenter & Co.*, 2005 WL 3371730 (N.D. Ill. Dec. 8, 2005); *see also Allstate Ins. Co. v. Empl's Reins. Corp.*, 441 F. Supp. 2d 865, 870 n.3 (N.D. Ill. 2005) (same). As in New York, the general rule in Illinois is that a cause of action under a contract of indemnity accrues when the indemnitee has suffered an actual loss. *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179, 199 (1989). Illinois courts have also made clear that the terms of the indemnity agreement determine when a cause of action for breach of that agreement accrues. *See Travelers Cas. & Sur. Co. v. Bowman*, 229 Ill. 2d 461, 477 (2008). Thus, under *Continental* and Illinois law, PTRIL's cause of action against Banco accrued when the Pine Top losses were "due and payable" under the Treaties. 77 F.3d at 20.

The four quota share contracts contain provisions requiring Pine Top to submit a quarterly account statement within thirty days or three months of the end of each quarter. (B-SOF ¶¶ 18-25.) As PTRIL's own witnesses have confirmed, the balance shown in the account statement was due and payable no later than three months from the end of each quarter. (*Id.*)[7] Similarly, under the Excess of Loss Treaty, the balance shown in the account statement was due and payable as soon as proof of payment was submitted to the intermediary. (*Id.* ¶¶ 26-27.)

Prior to the July 2008 billings, the most recent account statement had a "Billing Date" of *November 5, 1993*. (*Id.* ¶¶ 8,43.) The balances shown on those account statements would have been due and payable no later than February 1994. Since PTRIL did not bring this action until

---

[7] Four of the five Treaties permit Pine Top to bring suit in any United States court "[i]n the event of the failure of Reinsurers hereon to pay any amount claimed to be due hereunder." (B-SOF ¶ 28.)

8

*August 11, 2012 – 18 years later –* all of these account statements are plainly time-barred.[8]

Numerous courts have turned away stale reinsurance claims under similar circumstances. For instance, in *Republic Ins. Co. v. Banco de Seguros del Estado*, No. 10-CV-5039, 2013 WL 3874027 (N.D. Ill. July 26, 2013), Judge Hart held that most of Republic's claims were barred by either the English or the New York six-year statute of limitations. The contract at issue in *Republic* contained a similar accounting provision that required Republic to:

> [P]repare or cause to be prepared semi-annual account statements for each Account-Year . . . within 90 (ninety) days of the close of each half year, which shall be deemed to close on June 30th and December 31st respectively. The Accounts shall be confirmed by the Reinsurers within 30 (thirty) days and the balance shall be paid by the debtor within a further period of 60 (sixty) days after confirmation.

*Id.*, at *5. Under this language, the court dismissed all account statements that were due and payable more than six years and 180 days before Republic filed its lawsuit. *Id.*, at *8-10. Similarly, in *OneBeacon Ins. Co. v. Aviva Ins. Ltd.*, No. 10-CV-7498, 2013 WL 2147958, at *4-6 (E.D. Pa. May 17, 2013), the court held that reinsurance claims submitted on bordereaux more than four years prior to the initiation of the lawsuit were time-barred under Pennsylvania law.

The court's holding in *Gerling Global Reins. Corp. v. Safety Mutual Casualty Corp.*, No. 79 Civ. 4422, 1980 U.S. Dist. LEXIS 12078 (S.D.N.Y. Jun. 26, 1980), is also instructive. The contract provision at issue in that case was substantially the same as the provisions in the four quota share treaties at issue here, and the court held:

> The unequivocal intent of the parties was that Safety Mutual would report the premium required by the treaty in full on a quarterly basis, and that within 30 days thereafter, Safety Mutual would forward its payment of this full amount owed to Gerling. I hold that Gerling's cause of action for any shortfall in these quarterly payments resulting from a breach of contract accrued on the date each quarterly payment became due.

---

[8] The July 31, 2008 billings are timely, but reflect a balance in favor of Banco. (B-SOF. ¶¶ 9, 44.) Thus, PTRIL cannot recover in this case.

9

*Id.*, at *5.

Finally, in *Transport Ins. Co. v. TIG Ins. Co.*, 202 Cal. App. 4th 984, 987-988 (Cal. App. Ct. 2012), the court affirmed a jury verdict holding that the insurer's reinsurance claim was time-barred under a loss provision that required the reinsurer to pay "promptly following receipt of proof of loss." The same result is warranted here for the billings submitted under the Excess of Loss Treaty, which provides that the account statements are "immediately payable" following submission of the claim through the broker. (B-SOF ¶¶ 26-27.)

### B. PTRIL's "Open Account" Theory Lacks Merit.

PTRIL argues that the Treaties establish an "open account" between Pine Top and Banco. (*Id*. ¶ 54.) By doing so, PTRIL seeks to shoehorn its stale claims into an age-old doctrine established in Illinois as follows:

> [W]here there are mutual accounts between two persons, and there are some items, or any one item, within the period of limitation, the whole account will be taken out of the Statute of Limitations.

*Miller v. Cinnamon*, 168 Ill. 447, 456 (1897). On this theory, PTRIL asserts that the statute of limitations did not run until the last transaction in the so-called "open account," or July 31, 2008. (B-SOF ¶ 54.) PTRIL's "open account" argument does not breathe life into its stale claims, which were already time-barred long before the July 31, 2008 statements.

Under Illinois law, an "open account" exists where two parties establish a relationship in which each extends credit to the other with the understanding that the account upon one side shall offset that upon the other, and that, ultimately, there shall be a settlement of the balance. *In re Mortgage Escrow Deposit Litig.*, Nos. 90 C 5816 et al., 1994 WL 496707, at *3-4 (N.D. Ill. Sep. 9, 1994) (*citing Miller*, 168 Ill. at 48). An "open account" exists only where the parties intended for the account to run indefinitely. *Id*. ("In other words, the account must be mutual ***and open***") (emphasis added). Put another way, there can be no "open account" when the

10

relevant contract requires that the accounts be settled by a date certain. *See, e.g., Republic*, 2013 WL 3874027, at *10 n. 8 (citing cases); *Rodgers v. Roulette Records, Inc.*, 677 F. Supp. 731, 736 (S.D.N.Y. 1988) ("Since defendants were to state and pay the balance at the end of each six-month period, the account was intended to be open only for each six-month period").

Here, the Treaties require that the accounts be settled within a set period of time or "immediately." (B-SOF ¶¶ 18-27.) According to PTRIL's own witness, the balance owed for each account statement rendered by Pine Top or the Liquidator was due and payable no later than three months after the end of each quarter. (*Id.* ¶¶ 19, 21, 23, 25.) Indeed, PTRIL's counsel admitted that the Treaties "required prompt settlement by reinsurers." (*Id.* ¶ 58.)

Moreover, the Liquidator's conduct in rendering each account is wholly inconsistent with PTRIL's newfound "open account" argument. For example, on March 11, 1991, the Liquidator sent a letter to Pine Top's broker, Enan, forwarding account statements for the period ending December 31, 1989. (*Id.* ¶ 55.) The Liquidator directed Enan to forward the account statements to the sub-brokers or reinsurers by April 1, 1991, and to advise that "[b]alances due Pine Top must be remitted no later than June 1, 1991." (*Id.*) This confirms that the Liquidator intended to settle the accounts immediately as opposed to keeping them open indefinitely.

Furthermore, in 1994 and again in 1995, the Liquidator threatened to sue or initiate arbitration against Banco, if Banco did not pay the amounts then purportedly outstanding (over $2.3 million). (*Id.* ¶ 57.) Accordingly, PTRIL's "open account" theory is a *post hoc* argument contrived by PTRIL to salvage these long-expired claims.

      C.    **The Insurance Code Does Not Toll The Statute of Limitations.**

Prior to purchasing Pine Top's reinsurance receivables, PTRIL and other prospective purchasers were given an opportunity to submit questions to the Liquidator about the assets up for sale. (*Id.* ¶ 12.) The questions and answers posted on the Liquidator's website included:

11

> Q9: Has an assertion of Time Bar against Pine Top been successfully defended, on a commercial basis or otherwise, and if so what point in law was used as a defence?
>
> A9: Yes, without the use of arbitration or point of law. . . .
>
> Q35: Does legislation exist to protect the balances from a defence of time bar?
>
> A35: No.

(*Id*. ¶ 13.) Despite the Liquidator's clear admission, PTRIL will argue to this Court that "any applicable statutes of limitation not already expired as of the date Pine Top was placed in Rehabilitation (June 23, 1986) were tolled or did not commence to run until the net liability of Banco could be determined . . . pursuant to 215 ILCS 5/206." (*Id*. ¶ 54.) On this theory, the statute of limitations did not run until on or about July 31, 2008, which is when Banco's "net liability" would have been determined. (*Id*.) This novel argument should not succeed here.

PTRIL's argument relies on a provision of the Insurance Code entitled "Set-Offs or Counterclaims," which states, in pertinent part, as follows:

> In all cases of mutual debts or mutual credits between the company and another person, such credits and debts shall be set off or counterclaimed and the balance only shall be allowed or paid . . .

215 ILCS 5/206. This provision merely prescribes the circumstances under which a party may assert the right of set off against the liquidator of an insolvent insurer. *Selcke v. New England Ins. Co.*, 995 F.2d 688, 689 (7th Cir. 1993) ("All the statute at issue in this case does is create a right of setoff"); *O'Connor v. Ins. Co. of N. Am.*, 622 F. Supp. 611, 616-19 (N.D. Ill. 1985) (discussing 215 ILCS 5/206).

There is nothing in 215 ILCS 5/206 that operates to toll the statute of limitations. The provision of the Insurance Code that actually deals with the statute of limitations is 215 ILCS 5/194. That provision states, in pertinent part, as follows:

> The Director may, within 2 years after the entry of an order for rehabilitation or

12

>liquidation or within such further time as applicable law permits, institute an action, claim, suit, or proceeding upon any cause of action against which the period of limitation fixed by applicable law has not expired at the time of filing of the complaint upon which the order is entered.

215 ILCS 5/194.

The Liquidation Order was entered on January 16, 1987. (B-SOF ¶ 6.) The Liquidator had two years, or "such further time as applicable law permits," from the date of that order to bring a claim against Banco for the allegedly unpaid account statements. *Liquidation of MedCare HMO, Inc.*, 294 Ill. App. 3d 42, 55 (Ill. App. Ct.1997); *see also Colonial Assur. v. Mercantile & Gen. Reinsurance Co.*, 130 F. App'x 607, 610 (3d Cir. 2005). The Liquidator did not bring its claims within the timeframe permitted under the Insurance Code. That is why the Liquidator sold these assets to PTRIL for almost nothing.

The opinion in *Superintendent of Financial Services. v. Guarantee Ins. Co.*, No. 450023/13, 2013 WL 3008633 (N.Y. Sup. Ct. Jun. 10, 2013) demonstrates that liquidators are required to abide by the statute of limitations. In that case, the court held that the New York liquidator's reinsurance claims were barred by New York's six-year statute of limitations. *Id*., at *3-4. The alleged unpaid billings in the *Guarantee* case were sent by the liquidator to the reinsurer in 1994 and 2001. *Id*., at *3. The court held that the statute of limitations began to run at the time the reinsurer was contractually obligated to pay—six years after each account statement was sent. *Id*., at *3. Even though New York has a similar "set off" statute,[9] and despite the fact that the account statements arose in the context of liquidation proceedings, the court noted that "[i]n the absence of an actual written modification of the original treaty, the court will not infer from the parties' sporadic commutation negotiations[10] that they had agreed

---

[9] *See* N.Y. Ins. Law § 7427.

that there would be no payment until all the underlying claims had been settled." *Id*., at *4.

In sum, the Liquidator's website commentary was correct. There is no legislation that protects PTRIL from a time-bar defense.

## II. PTRIL IS NOT ENTITLED TO INTEREST.

Alternatively, if the Court denies Banco's motion for summary judgment on the statute of limitations, PTRIL's claim for interest should be summarily rejected.

The Seventh Circuit recognizes that a district court judge has discretion to deny interest where there is a "substantial, unexplained delay in filing suit." *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1334 (7th Cir. 1992). The reason for this is simple: a substantial delay improperly "shifts the investment risk to the defendant, allowing the plaintiff to recover interest without bearing the corresponding risk." *Id*.

It is undisputed that the pre-2008 account statements are dated from 1993 or earlier. (B-SOF ¶¶ 8-43.) It is also undisputed that the Liquidator and Banco engaged in discussions to commute all of the Pine Top-Banco Treaties in the early 1990s. (*Id*. ¶¶ 63-66.) Due to the extraordinary passage of time, neither party is able to muster any witnesses or documents that show how those commutation discussions concluded. (*Id*.) Assuming there was no commutation, and assuming further that some or all of the billings at issue were not in fact already paid, the Liquidator could have, and should have, brought this action against Banco by 1995. Instead, the Liquidator made a conscious decision to do nothing for nearly two decades.

In 2008, the Liquidator issued final account statements to Banco, yet no action to recover

---

[10] The fact that the parties in *Guarantee* had been in commutation discussions did not operate to defeat the statute of limitations. *Guarantee*, 2013 WL 3008633, at *4. As a result, the court concluded, "plaintiff cannot assert a cause of action for Guarantee's refusal to pay for losses that were accounted for in the 1994 and 2001 billings." *Id*. Similarly, the commutation discussions between the Liquidator and Banco in the 1990s did not toll the statute of limitations here. *Viirre v. Zayre Stores, Inc.*, 212 Ill. App. 3d 505, 515 (Ill. App. Ct. 1991).

was brought then. (*Id*. ¶ 9.) PTRIL purchased the Pine Top reinsurance assets in 2010, yet inexplicably waited two years to pursue its claims against Banco. (*Id*. ¶ 11.) Under these facts, there is no question that "a substantial, unexplained delay in filing suit" occurred here. Banco is not an ATM machine, holding money for PTRIL until PTRIL is ready to make a withdrawal. Accordingly, PTRIL's claim for interest should be summarily denied.

## CONCLUSION

WHEREFORE, for all of the reasons set forth above, Defendant Banco requests that this Court issue an Order, as set forth in its Motion, together with such other relief that the Court deems just and proper under the circumstances.

Dated: February 18, 2016                              BANCO DE SEGUROS DEL ESTADO


By: _____s/ Ernesto R. Palomo_____
     One of its attorneys

Ernesto R. Palomo (# 6278186)
Locke Lord LLP
111 South Wacker Drive
Chicago, IL  60606
epalomo@lockelord.com

and

Robert A. Badgley (# 6206520)
Karbal Cohen Economou Silk Dunne LLC
150 South Wacker Drive
Chicago, IL 60606
rbadgley@karballaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 18, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

    **Robert A. Badgley**
    badgley@karballaw.com

    **William Tobias Eveland**
    wteveland@arnstein.com

    **Ernesto R. Palomo**
    epalomo@lockelord.com

    **Sharilee Kempa Smentek**
    skempa@arnstein.com

    **Mary Cannon Veed**
    mcv@veedlaw.com

                                                                s/ Ernesto R. Palomo
                                                                       Ernesto R. Palomo

Ernesto R. Palomo (# 6278186)
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
(312) 443-0477 (E.R. Palomo)
FAX -- (312) 896-6477 (E.R. Palomo)
epalomo@lockelord.com

and

Robert A. Badgley (# 6206520)
KARBAL COHEN ECONOMOU SILK DUNNE LLC
150 South Wacker Drive
Chicago, Illinois 60606
(312) 431-3634 (R.A. Badgley)
FAX – (312) 431-3670 (R.A. Badgley)
rbadgley@karballaw.com

*Attorneys for Defendant Banco de Seguros del Estado*